NEW-YORK,
April, 1823.

The People
*vs.*
Samuel Clark

---

## The People *vs.* Samuel Clark.  *Forgery.*

The party calling a witness to character, is confined to general questions; the opposite party may, if he choose, ask particulars.

SAMUEL CLARK was charged with forging and having in his possession, with intention to pass, two $20 forged notes of the Bank of Newburgh, and actually passing them to J. H. Purdy and Jesse Lownsbury upon the 1st and 4th of March last.

The facts were these: It appeared by the testimony of Mr. John Owen, that on the morning of the 1st of March, as he was sitting in the stage, at the prisoner's house, and was about returning home to Westchester

County, the prisoner came to the stage door and asked him to change a $20 note; that he took the note and upon looking at it, discovered it was a genuine $1 note altered into a $20 note. He told the prisoner it was altered, and he said, "give me the note, that I may take it back to the man in the house."

About 10 oclock the same day, the prisoner asked Mr. J. H. Purdy, who put up at his house, to change him a $20 note, and upon receiving assurances from him that it was a good bill, he did change it; it proved to be a genuine $1 note, of the Bank of Newburgh, altered into a $20 note.

On the 4th of March, Mr. Jesse Lownsbury, who also put up at the prisoner's house, received an altered $1 note of the Bank of Newburgh, into a $20 note, and under assurances, before Mr. Lownsbury would consent to change it, that it was a good bill. It proved to be the same bill offered to and refused by Mr. Owen.

It also appeared, by the testimony of Mr. Baily, that he ran a stage from Clark's Tavern, in the Bowery, to Westchester; that the prisoner sometimes received the amount of fare of passengers who took seats in the stage; and that he had received, in a short time, 7 or 8 counterfeit bills, remitted to him by the prisoner.

When Mr Purdy returned into Westchester County, he called upon Mr. Baily for the purpose of making a payment to him, and among the notes offered, was the $20 note received from the prisoner. It was immediately detected to be spurious, and arrangements were made to detect the prisoner.

NEW-YORK, April, 1823. The People *vs.* Samuel Clark

Mr. Baily happened to be present in the house of the prisoner when the note was offered to Mr. Lownsbury to change, and mistrusted it was a bad note. He had an interview with Mr. Lownsbury, and it was ascertained to be a bad note ; complaint was made to the Police ; process was issued, and the prisoner taken, and gave bail for his appearance. It was proved by a number of witnesses, that the prisoner had been heretofore suspected of passing counterfeit money—had been charged and a *nolle prosequi* entered. It was proved, by a number of witnesses from Westchester, that his character, among them, was bad.

*Maxwell, District Attorney*, rested the case.

A number of witnesses, of the first respectability, were called, who testified that they had known the prisoner a long time ; he had always sustained a good character, and had kept an extensive inn, or tavern in the Bowery, where the first people of Westchester County had, for a long time past, been in the habit of putting up ; that some of the witnesses had known him for upwards of seventeen years, and he had, during that time, supported a character for honesty and integrity. Dr. Walters testified that he had lent him large sums of money, which had been promptly paid ; that the prisoner was not a good judge of counterfeit money—in several instances he had given him notes to deposit in the Bank, which he had detected to be false. And further proved that his business was extensive, and he was in the habit of receiving very considerable sums of money daily ; and that he had had, and continued to have the utmost confidence in his honesty and integrity.

Mr. Baily was called to rebut the testimony of the good character of the prisoner.

*Maxwell, District Attorney ;* for the prosecution, asked

the character of the prisoner; and the witness answered it was bad, and was proceeding to relate the particular facts upon which his opinion was grounded, when *Price*, coun- sel for the prisoner, objected. The Court decided, that the party calling a witness, was confined to the general question, " What is the general character of the prisoner?" and that the opposite party might interrogate to particular facts upon which his opinion of character was founded, if he chose, but that the party calling him could not.

*Price* contended, before the jury, that in cases involved in doubt, as this was, it would be a dangerous prece- dent to press a conviction. The prisoner was well known in the city, and was upwards of sixty years of age, and during this time, had gained a reputation for honesty and integrity that few men possessed ; that if such a reputation could be destroyed by mere doubtful circumstances, no man would be safe, nor reputation worth having. Few men in the extensive business of Mr. Clark, but what in- nocently receive and pay away more or less spurious pa- per, without being arraigned and tried for forgery and pass- ing forged bills. It was proved beyond all doubt, that Mr. Clark was a very imperfect judge of counterfeit money ; he is a tavern keeper, and was liable to receive it every day, and the construction was fair and natural that he did so receive it. Dr. Walters has set this matter at rest. He says Clark is a very bad judge of counterfeit money; he had proved it to his satisfaction, that there was nothing strange or unusual in Mr. Clark, not being able to show the Court and Jury when and from whom he obtained the money. It was often difficult to recollect, in the hurry of business, the person from whom bad money was received, and after a lapse of time, impossible.

The counsel contended that if the defendant had really

NEW-YORK, April, 1823.

The People
*vs.*
Samuel Clark

undertaken the business of forging and passing forged paper, he would not have put off his spurious bills upon people who put up at his house every week, and sometimes much oftener—he must have known that detection was near and certain. The bills were passed in the day time, and in the most public place—that when these facts were taken into consideration, with the good character of the defendant, they ought to operate in his favor, and insure an acquittal. &c.

*Maxwell* observed that he had no other disposition to press this case, than the fair and impartial administration of public justice required, but that the facts, he thought, would warrant him in asking for a verdict against the prisoner. He contended the fact of passing the bills in the manner charged in the indictment, had been substantially and fully proved, it was not denied or attempted to be denied by the counsel for the prisoner. The same bill was passed upon Mr. Lownsbury that was offered to Mr. Owen but a few days before, and refused by him, and also the reason why he refused it, given at the time to the prisoner. It was, therefore, evident he knew it to be a forged bill.

It was proved, that only a few hours after the bill was offered to Mr. Owen, another bill of the same bank and of the same amount was offered and passed upon Mr. Purdy. These were facts which had not and could not be denied. And, notwithstanding these facts were of such a decisive character, the prisoner had not shown or even attempted to show the Court and jury from whom he obtained them—upon this all important point he was entirely silent. Mr. Baily, a respectable witness, had testified that Clark was agent to his stages running from Clark's

house in the Bowery, to Westchester, and during the very short period of his agency, eight counterfeit bills were received from him through the drivers of the stages. This wss strong corroborative testimony that the prisoner was engaged in passing counterfeit money, and that the character of the prisoner was not without suspicion. A number of witnesses from Westchester have testified that the prisoner is a man of bad character; and others, in this city, that his character is good; character may therefore be considered as balanced. The inferences from the facts before stated were irresistable and not explained, &c.

The court observed to the jury, that they must judge, from all the circumstances of the case, whether the prisoner was guilty or not guilty, as charged in the indictment; that the case was somewhat intricate and doubtful, as cases of this nature generally were. There were, however, some circumstances against the prisoner to which the court would direct their attention.

1. The charges of passing the forged bills were fully and satisfactorily made out.

2. The prisoner passed to Mr. Lownsbury the same bill offered to Mr. Owen.

3. The same morning the bill was offered to Mr. Owen, the other counterfeit bill was passed upon Mr. Purdy.

4. The prisoner has not shown, or offered to show, where or how they came into his possession.

5. He was always apparently in a hurry when he offered them to be changed.

6. Mr. Baily received seven or eight forged bills from the prisoner during the short time he was agent for his stages.

7. A number of people from Westchester have testified that his character is bad.

There were also a number of circumstances in his favor.

1. He always offered the forged bills in the day time.

2. They were offered and received by persons with whom he was acquainted.

3. It was proved by a number of respectable witnesses, that the prisoner was a very imperfect judge of money.

4. It was also proved that the prisoner kept a very decent and respectable tavern.

5. In all the communications made to the police office and to the officers, by those arrested for forgery and passing forged bills, no mention has ever been made of the prisoner.

6. A great number of respectable witnesses have testified that he is a man of good character.

And the Court left it to the jury to weigh those circumstances both for and against him, and to decide accordingly.

The jury found the prisoner not guilty.